**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-23453-CIV-ALTONAGA**

**RAIKO MORFFI LOPEZ**,

Petitioner,

v.

**TODD BLANCHE**, *et al.*,

Respondents.
__________________________/

**ORDER**

**THIS CAUSE** came before the Court on Petitioner, Raiko Morffi Lopez's Petition for Writ of Habeas Corpus [ECF No. 1]. Petitioner challenges his detention in Respondents' custody in Miami, Florida. (*See generally id.*). Respondents filed a Response [ECF No. 11]; to which Petitioner filed a Reply [ECF No. 12]. For the following reasons, the Petition is dismissed in part and denied in part.

## I. BACKGROUND

Petitioner is a Cuban citizen who first entered the United States in 2014. (*See* Pet. ¶ 9). On January 9, 2016, Petitioner adjusted status to that of a lawful permanent resident. (*See* Resp. 1–2).[1] On April 3, 2018, Petitioner was convicted and sentenced to 30 months' imprisonment for the "felony offense of possession of at least 15 counterfeit/unauthorized access devices. (*Id.* 2 (citation omitted)). The U.S. Department of Homeland Security subsequently initiated removal proceedings against Petitioner, filing a Notice to Appear ("NTA") on July 11, 2019. (*See id.*; *see also generally id.*, Ex. D, NTA [ECF No. 11-4]).

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Petitioner's custody was transferred to immigration officials upon completion of his criminal sentence on September 6, 2019. (*See* Resp. 2). On October 30, 2019, an Immigration Judge ("IJ") ordered Petitioner removed to Cuba. (*See id.*; *see also id.*, Ex. E, Order of the IJ [ECF No. 11-5] 1). But on January 10, 2020, Petitioner was released from immigration detention with an Order of Supervision ("OSUP"). (*See* Resp. 3).

Nearly six years later, on December 11, 2025, Immigration and Customs Enforcement ("ICE") issued a Notice of Revocation of Release "stating that Petitioner's OSUP was revoked because it was appropriate to enforce his removal order." (*Id.*; *see also generally id.*, Ex. G, Notice of Revocation of Release [ECF No. 11-7]). Petitioner was taken into ICE custody that same day. (*See* Pet ¶ 13). On May 20, 2026, ICE "issued and served upon Petitioner a Notice of Revocation of Release advising Petitioner that his release was revoked to enforce the removal order and conducted an informal interview to give Petitioner an opportunity to respond to the reasons for the revocation." (Resp. 3 (citing *id.*, Ex. I, Second Notice of Revocation of Release [ECF No. 11-9]). Petitioner was given an informal interview later that day. (*See* Resp. 3).

A few days before the interview, on May 16, 2026, Petitioner filed his Petition, asserting three claims for relief. (*See generally* Pet.). In Count I, Petitioner alleges his detention is unlawful based on the principles articulated in *Zadvydas v. Davis*, 533 U.S. 678 (2001), arguing "[t]here is no significant likelihood of removal to any other country in the reasonably foreseeable future." (Pet. ¶ 53 (alteration added)). In Count II, Petitioner alleges Respondents' decision to revoke his OSUP and detain him was undertaken without notice or meaningful process, in violation of the Fifth Amendment. (*See id.* ¶¶ 55–59). In Count III, Petitioner alleges Respondents violated the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the *Accardi* doctrine when his OSUP was "arbitrarily revoked without a change in circumstances and

without notice or opportunity provided to challenge his re-detention." (*Id.* ¶ 69). Petitioner seeks immediate release from detention. (*See id.* 19).

Respondents argue (1) the Court lacks jurisdiction to grant the relief Petitioner seeks (*see* Resp. 4–6); (2) Petitioner is properly detained under 8 U.S.C. section 1231 (*see id.* 6–7); (3) Petitioner's *Zadvydas* challenge is both premature and without merit (*see id.* 7–12); and (4) revocation of Petitioner's OSUP complies with the Constitution and applicable agency regulations (*see id.* 12–19).

On June 24, 2026, the Court entered an Order [ECF No. 13] directing Respondents to submit supplemental briefing addressing "ICE's efforts to remove Petitioner, and whether Petitioner's removal is significantly likely to occur in the reasonably foreseeable future." (*Id.* 1–2). On July 1, 2026, Respondents submitted a Supplemental Response ("Resp'ts' Suppl. Resp.") [ECF No. 14], advising that: (1) ICE attempted to remove Petitioner to Mexico in January, but he "failed to comply . . . by refusing to get off the bus at the Hidalgo, Texas port of entry" (*id.* 1–2 (alteration added; citation omitted)); and (2) Petitioner's case was "referred to ICE headquarters for consideration of his removal pursuant to a third-party removal agreement" (*id.* 2 (citation omitted)). On July 10, 2026, Petitioner filed a Reply to Respondents' Supplemental Briefing ("Pet'r's Suppl. Reply") [ECF No. 17], contending that Respondents' failed attempt to remove him to Mexico was unlawful, and his removal remains unlikely in the foreseeable future. (*See generally id.*).

## II. LEGAL STANDARD

District courts have the authority to grant petitions for writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may issue to a petitioner who

demonstrates he is detained in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

***Jurisdiction.*** Respondents first contend that 8 U.S.C. section 1252(g) bars review of Petitioner's claims. (*See* Resp. 4–6). Section 1252(g)'s jurisdictional bar "applies only to three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis and quotation marks omitted).

Respondents argue the Petition challenges the third of these categories — ICE's decision to execute Petitioner's final removal order — and is therefore barred by section 1252(g). (*See* Resp. 4–6). As the Court sees it, Petitioner challenges the constitutionality of his prolonged detention and the way the Government revoked his OSUP, not its decision to execute his removal order. (*See generally* Pet.). And since Petitioner does not challenge the "decision or action to commence proceedings, adjudicate cases, or execute removal orders[,]" section 1252(g) does not deprive the Court of jurisdiction. *Reno*, 525 U.S. at 482 (alteration added; emphasis and quotation marks omitted).

***Prolonged Detention (Count I).*** In Count I, Petitioner argues his continued detention under section 1231 violates the Fifth Amendment because there is no significant likelihood of his removal in the reasonably foreseeable future. (*See* Pet. ¶ 53). Respondents contend Petitioner's challenge is premature (*see* Resp. 7–11), he has not met his burden under *Zadvydas* (*see id.* 11–12), and he has failed to comply with the Government's removal efforts (*see* Resp'ts' Suppl. Resp. 1–4).

The parties agree that Petitioner is subject to a final order of removal (*see* Pet. ¶ 11; Resp. 6), so 8 U.S.C. section 1231 is the relevant statutory provision that governs Petitioner's detention, *see Guagalango v. Mullins*, No. 26-61356-Cv, 2026 WL 1620255, at *2 (S.D. Fla. June 2, 2026). Under section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A) (alteration added). During this 90-day removal period, "the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Additionally, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure[.]" *Id.* § 1231(a)(1)(C) (alterations added).

In *Zadvydas*, the Court concluded that detention under section 1231 is "presumptively reasonable" if it does not exceed 180 days and clarified that this presumption "does not mean that every alien not removed [within 180 days] must be released[.]" *Zadvydas*, 533 U.S. at 701 (alterations added); *see also id.* ("To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). The 180-day period "must have expired at the time [Petitioner's] [section] 2241 Petition was filed [] to state a claim under *Zadvydas*. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (alterations added).

Respondents first argue Petitioner's *Zadvydas* challenge is premature, as Petitioner had only been detained for 156 days prior to the filing of his Petition. (*See* Resp. 7). Petitioner insists that his prior three-month detention in October 2019 should be included in calculating the detention period. (*See* Reply 2–4). Respondents have the stronger argument.

"A split of authority exists as to when the six-month period begins." *Vargas v. U.S. Immigr. & Customs Enf't*, No. 26-cv-440, 2026 WL 815843, at *1 (M.D. Fla. Mar. 25, 2026). Some courts have determined that "each period of detention restarts the removal-period clock." *Id.* (citing *Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025); *Liu v. Carter*, No. 25-3036, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025); other citation omitted). Others have chosen to aggregate prior time spent in detention, concerned the Government could otherwise release and promptly detain a petitioner for the primary purpose of resetting the *Zadvydas* clock. *See, e.g.*, *Krechmar v. Parra*, No. 25-cv-01095, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025) (restarting the clock "would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every six months").

The six-month period provides the Government an opportunity to coordinate the often-complex logistics involved in effectuating an individual's removal: negotiating with foreign countries, securing travel documents, and arranging transfer. This process takes time, irrespective of whether a petitioner was detained previously — in some instances, as here, many years prior and under significantly changed circumstances. *See Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-cv-20226, 2026 WL 406708, at *2–3 (S.D. Fla. Feb. 13, 2026). To aggregate a petitioner's previous and current detentions "would require the judicial branch to opine on the constitutionality of subsequent detention periods of even one day, which would obstruct an area that is in the discretion of the Attorney General — effectuating removals." *Id.* (quotation marks and citation omitted).

The prudent approach is "to afford the [G[overnment a new six-month presumptively reasonable period for each discrete detention, unless there are facts suggesting the [G]overnment

is acting with an improper motive." *Rodriguez v. U.S. Immigr. & Customs Enf't*, No. 26-cv-1043, 2026 WL 1156079, at *3 (M.D. Fla. Apr. 29, 2026) (alterations added); *see also Flores-Reyes*, No. 2026 WL 406708, at *2 ("Given the executive branch's immigration-related expertise and statutory authority to effectuate removals, we don't think *Zadvydas* precludes the government from detaining a criminal alien . . . just because he was detained for six months over twenty years ago." (alteration added; citation omitted)). Of course, if the record suggests gamesmanship on the part of the Government "designed merely to reset the *Zadvydas* clock or evade judicial review, aggregation may be entirely appropriate." *Rodriguez*, 2026 WL 1156079, at *3.

The record here is devoid of any such gamesmanship. Petitioner was released in January 2020 and not detained again until December 2025. (*See* Pet. ¶¶ 11–13). And Respondents attempted to remove Petitioner shortly thereafter on January 19, 2026. (*See* Resp'ts' Suppl. Resp. 1 (noting Respondents' attempt to remove Petitioner to Mexico, which occurred just over one month following his December 2025 detention)). The Court will not aggregate Petitioner's prior time in detention.

At the time he filed his Petition, Petitioner had been detained for less than 180 days. (*See* Resp. 11 n.3). That Petitioner has now been detained for over six months does not cure this defect. *See Akinwale*, 287 F.3d at 1052; *see also Rodriguez Ibara v. Warden*, No. 26-cv-256, 2026 WL 776173, at *2 (M.D. Fla. Mar. 19, 2026) ("[A]lthough [p]etitioner has now been detained for longer than six months, his *Zadvydas* claim was not ripe at the time he filed the petition, and this [claim] will be dismissed without prejudice." (alterations added; footnote call number omitted)). Thus, the claim in Count I is dismissed without prejudice.[2]

[2] Since the Court finds Petitioner's *Zadvydas* claim was not ripe at the time of filing, it does not address Respondents' other arguments. *See Busby v. I.R.S.*, No. 96-6566-Civ, 1997 WL 364507, at *2 (S.D. Fla. Feb. 23, 1997) ("Because the [C]ourt finds this argument dispositive, it does not address [Respondents'] other arguments." (alterations added)).

***Procedural Due Process (Count II).*** In Count II, Petitioner asserts that the way Respondents revoked his OSUP was in violation of his procedural due process rights under the Fifth Amendment. (*See* Pet. ¶¶ 55–59). Respondents argue Petitioner has now received the process due to him. (*See* Resp. 12–15).

Under 8 C.F.R. Section 241.4(*l*)(1), an alien "who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody." *Id.* Such an alien "will be notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to" custody. *Id.* Section (*l*)(2) gives the Government "authority, in the exercise of discretion, to revoke release and return to" an alien to custody. *Id.* § 241.4(*l*)(2). "Release may be revoked in the exercise of discretion when, in the opinion of the revoking official: . . . [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien[.]" *Id.* (alterations added). Section (*l*)(2) references no requirement for notice or an informal interview. *See id.*

Courts nevertheless interpret section 241.4(*l*) to require notice and an informal interview upon revocation of release regardless of whether revocation occurs under section 241.4(*l*)(1) or (*l*)(2). *See, e.g.*, *Banega v. Warden of Soft Side S. Facility*, No. 25-cv-1152, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026) (collecting cases); *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 2604573, at *6 (S.D. Fla. Sep. 9, 2025) (same); *see also id.* at *6–7 (explaining how section 241.4(*l*)'s text shows section (*l*)(1)'s requirements apply no matter the reason for the revocation of release).

Respondents state they have complied with the requirements outlined in section 241.4(*l*)(1), having provided Petitioner with written notice on December 11, 2025 (*see* Resp. 14; Notice of Revocation of Release 1) and an informal interview on May 20, 2026 (*see* Resp. 14).

Petitioner does not contest that he has been given notice and an interview. (*See generally* Reply). But he asserts his informal interview — which was conducted shortly after the Petition was filed and more than five months after Petitioner's OSUP was revoked — was not sufficiently prompt to comply with section 241.4(*l*)(1)'s requirement. (*See* Reply 6). Although Petitioner cites no authority suggesting that his interview needed to occur prior to May 20, 2026, the Court agrees that Respondents did not provide the informal interview "promptly" as contemplated under section 241.4(*l*)(1).

The ordinary remedy for a denial of due process is "only . . . the grant of the procedures due." *Ray v. Foltz*, 370 F.3d 1079, 1085 n.8 (11th Cir. 2004) (alteration added; citation omitted); *see also Ron Grp., LLC v. Azar*, 574 F. Supp. 3d 1094, 1107 (M.D. Ala. Nov. 29, 2021) ("The remedy for a violation of due process is process."). At the time Petitioner filed his Petition, he had not received the informal interview; but he now has. Since Count II is predicated on Respondents' failure to provide Petitioner process that he has now received, the claim is moot and thus denied. *See Novas Alvarez v. Ripa*, No. 26-23987-Civ, 2026 WL 1894071, at *3 (S.D. Fla. July 1, 2026) (denying due process claim where petitioner "was given notice of the revocation of his OSUP by both the Notice of Revocation of Release and the informal interview and an opportunity to respond in the informal interview, [and therefore] his right to procedural due process was not violated" (alteration added)).

***Violation of the INA, APA, and* Accardi *Doctrine (Count III).*** In Count III, Petitioner again objects to the way Respondents revoked his OSUP — this time arguing it was done in violation of the INA, the APA, and the *Accardi* doctrine. (*See* Pet. ¶¶ 60–69); *see also generally United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

To the extent Petitioner brings an APA challenge in Count III, he lacks standing to do so. "An APA claim is only available for final agency action for which there is no other adequate remedy in a court." *Novas Alvarez*, 2026 WL 1894071, at *3 (quotation marks and citation omitted). Here, habeas offers Petitioner the relief he seeks: release from detention. *Cf. Habash v. Warden, Krome Serv. Processing Ctr.*, No. 26-cv-22397, 2026 WL 1217754, at *7 (S.D. Fla. May 5, 2026) ("[H]abeas petitions are generally not a proper vehicle for an APA cause of action." (alteration added)).

As explained, Respondents have now provided Petitioner with the process owed to him under the regulations set out in section 241.4(*l*)(1). Petitioner's only remaining qualm is therefore with the timing of his interview. (*See* Reply 6). But Respondents' delay does not entitle Petitioner to the relief he is requesting, release from detention.

Petitioner has a final order of removal and is being lawfully held under 8 U.S.C. section 1231. (*See* Resp. 6; Reply 4 n.3); *see also Guagalango*, 2026 WL 1620255, at *2. "[I]f sufficient ground for [Petitioner's] detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *Acosta Gonzalez v. Noem*, No. 26-60781-Civ, 2026 WL 1077836, at *4 (S.D. Fla. Apr. 20, 2026) (alterations added; quotation marks and citation omitted). Petitioner does not persuade that Respondents' delay in providing an informal interview somehow entitles him to release. Thus, the claim in Count III is denied. *See A.E. v. Powell*, No. 26-cv-337, 2026 WL 782294, at *3 (N.D. Ala. Mar. 19, 2026); *see also Van v. Oddo*, No. 25-cv-00322, 2025 WL 3492736, at *4 (W.D. Pa. Dec. 5, 2025) (petitioner had "not shown that the alleged violations . . . would independently entitle [petitioner] to a grant of habeas relief in the form of release from detention" (alterations added; citation omitted)).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Petitioner, Raiko Morffi Lopez's Petition for Writ of Habeas Corpus **[ECF No. 1]** is **DISMISSED in part and DENIED in part**. The claim in Count I is **DISMISSED without prejudice**. The claims in Counts II and III are **DENIED**. The Clerk of Court is directed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 25th day of August, 2026.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record